UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| PARKER HANNIFIN CORPORATION ) <br> as successor-by-merger to ) <br> CLARCOR, Inc., ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> TRAVELERS CASUALTY AND ) <br> SURETY COMPANY OF AMERICA, ) <br> Defendant. ) | CASE NO. 1:18CV2393 <br><br> JUDGE CHRISTOPHER A. BOYKO <br><br><br> OPINION AND ORDER |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #25) of Defendant Travelers Casualty and Surety Company of America to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6). For the following reasons, the Motion is denied.

**I. BACKGROUND**

On February 28, 2017, Plaintiff Parker Hannifin Corporation purchased the stock of CLARCOR, Inc. and succeeded to all of CLARCOR's rights, obligations and liabilities. Prior to the acquisition, CLARCOR was the administrator of the CLARCOR, Inc. Benefit Plan which provided employees with specified health insurance benefits. Defendant issued a

Fiduciary Liability Policy to CLARCOR for the period of July 1, 2016 to July 1, 2017, as it had for the prior coverage year.

Plaintiff alleges that on May 24, 2017, the United States Department of Labor ("DOL") - Employee Benefits Security Administration ("EBSA") sent CLARCOR written notice of errors and breaches of its fiduciary duties in the handling of CLARCOR's tobacco surcharge program, among other matters.  The EBSA found CLARCOR in violation of the Employee Retirement Income Security Act of 1974 ("ERISA") due to the imposition of a tobacco surcharge premium between 2011 and 2017 on Plan participants who were tobacco users, without providing them a "reasonable alternative" to paying that increased amount.

Pursuant to the Travelers' Fiduciary Liability Policy:  "Claim" means "a formal administrative or regulatory proceeding commenced by filing of a notice of charges, formal investigative order, service of summons or similar document, **including a fact-finding investigation by the Department of Labor**, the Pension Benefit Guaranty Corporation, or a similar government agency that is located outside of the United States . . . **against an Insured for a Wrongful Act**."  (Amended Complaint, ECF DKT #21, ¶ 17). (Emphasis added).

"Wrongful Act" means "any actual or alleged breach of fiduciary duty by or on behalf of the Insured with respect to any Employee Benefit Plan," including the actual or alleged breach of duties, obligations or responsibilities imposed by ERISA.  (*Id.* at ¶ 18).

A Claim is "deemed to be made on the earliest date that any Designated Claims Recipient first receives written notice of such Claim."  (*Id.* at ¶ 19).

Pursuant to its obligations under the Policy, Plaintiff provided Defendant with notice

of a Claim along with a copy of the EBSA letter on June 30, 2017. (*Id.* at ¶ 15).

Defendant acknowledged the Claim and requested information regarding when the DOL initiated any activity related to its investigation. Plaintiff promptly provided Travelers with a copy of a letter from the DOL dated January 5, 2016, which contained a list of 34 document requests regarding all aspects of CLARCOR's employee benefit plans and their administration. Plaintiff alleges that the words "tobacco surcharge" did not appear in the January 5, 2016 letter. (*Id.* at ¶¶ 23-24).

Plaintiff alleges that the DOL letter (which Plaintiff calls an "Audit Letter") did not identify a Wrongful Act; and therefore, no Claim existed at that time under the express language of the Policy. (*Id.* at ¶ 25).

Travelers denied coverage under the Policy on the basis of CLARCOR's earlier receipt of the January 5, 2016 letter. Per the Amended Complaint, Travelers maintained, without a reasonable basis, that the "Audit Letter" constituted a Claim; and therefore, the Claim was not "first made" within the policy period of July 1, 2016 to July 1, 2017. (*Id.* at ¶ 26).

On July 19, 2019, Plaintiff filed an Amended Complaint (ECF DKT #21) against Defendant for Breach of Contract and for Bad Faith under Ohio and Tennessee[1] law for denial of coverage without reasonable basis or justification in law or fact.

Plaintiff contends that Travelers denied coverage in contravention of the language of its Policy and the applicable law.

Plaintiff alleges that it incurred Covered Losses arising from a Claim, including legal fees, costs to retain a third-party entity to locate former employees, and payments to current

---

[1] Travelers Fiduciary Liability Policy was issued to CLARCOR in Tennessee.

and former employees who paid the surcharge, regardless of whether they participated in a tobacco cessation program or would have participated in such a program to avoid a surcharge. (*Id*. at ¶ 31).

Defendant knew or consciously disregarded the fact that the January 2016 letter did not constitute a Claim under the Fiduciary Liability Policy because it did not allege a Wrongful Act or other wrongdoing, but simply announced a fact-finding investigation. (*Id*. at ¶ 35).

Defendant knew that CLARCOR's receipt of the January 2016 letter was not when the "Claim" was "first made," yet Defendant denied coverage. (*Id*. at ¶ 38).

On August 23, 2019, Defendant filed the instant Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6). Defendant argues that Plaintiff's Amended Complaint fails to state a claim for relief because:

1. The EBSA Investigation constitutes a Claim that was "first made" prior to the inception of the Policy and coverage is not available under the Insuring Agreement in the first instance;

2. Plaintiff settled EBSA's allegations without Travelers' prior written consent – a condition precedent to coverage under the Policy – and before Travelers was even notified of the EBSA Investigation; and

3. The relief sought by EBSA and ultimately paid by Plaintiff – refunds of the improper tobacco surcharges – constitutes restitution or disgorgement of an improper benefit and does not constitute Covered Loss under the Policy. (ECF DKT #23 at 4).

## II. LAW AND ANALYSIS

**Standard of Review - Fed.R.Civ.P. 12(b)(6)**

"In reviewing a motion to dismiss, we construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Factual allegations contained in a complaint must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). *Twombly* does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Dismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990). The United States Supreme Court, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), discussed *Twombly* and provided additional analysis of the motion to dismiss standard:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-plead factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679.

According to the Sixth Circuit, the standard described in *Twombly* and *Iqbal* "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir.2007) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2nd Cir.2007)).

The Court should disregard conclusory allegations, including legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555; *J & J Sports Prods. v. Kennedy*, No. 1:10CV2740, 2011 U.S. Dist. LEXIS 154644, *4 (N.D.Ohio Nov. 3, 2011).

A written instrument attached to a pleading is a part of the pleading for all purposes. Fed.R.Civ.P. 10(c). "In addition, when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.,* 508 F.3d 327, 335–36 (6th Cir. 2007).

**<u>Insurance and Breach of Contract</u>**

"Insurance policies are, at their core, contracts." *Allstate Ins. Co. v. Tarrant*, 363 S.W.3d 508, 527 (Tenn. 2012) (Koch, J., dissenting). "As such, courts interpret insurance policies using the same tenets that guide the construction of any other contract." *Garrison v. Bickford*, 377 S.W.3d 659, 663 (Tenn. 2012), *citing Am. Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 814 (Tenn.2000). Thus, the terms of an insurance policy "should be given their plain and ordinary meaning, for the primary rule of contract interpretation is to ascertain and give effect to the intent of the parties." *Garrison, id.; Clark v. Sputniks, LLC*, 368 S.W.3d 431, 441 (Tenn. 2012).

Contracts of insurance are strictly construed in favor of the insured, and if the disputed provision is susceptible to more than one plausible meaning, the meaning favorable to the insured controls. *Tata v. Nichols*, 848 S.W.2d 649, 650 (Tenn. 1993); *VanBebber v. Roach*, 252 S.W.3d 279, 284 (Tenn.Ct.App. 2007).

Under Tennessee law, the elements for a breach-of-contract claim are: (1) the existence of an enforceable contract; (2) nonperformance amounting to breach of the contract; and (3) damages caused by the breach of contract. *Life Care Centers of America, Inc. v. Charles Town Associates Limited Partnership*, 79 F.3d 496, 514 (6th Cir. 1996); *see ARC*

*LifeMed, Inc. v. AMC-Tenn., Inc*., 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005).

Upon consideration of the allegations within the "four corners" of the Amended Complaint and of the documents which the parties agree are referenced in it, and construing the allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff has stated plausible claims for relief for Breach of Contract and Bad Faith.

Defendant challenges the Breach of Contract Count on the basis that the Fiduciary Liability Insurance Claim was "first made" with the EBSA letter dated January 5, 2016, which was outside the coverage period of July 1, 2016 to July 1, 2017. Plaintiff alleges there was no legitimate "Claim" until the May 24, 2017 EBSA letter.

According to the Policy, a "Claim" can include a fact-finding investigation by the Department of Labor into an Insured's "Wrongful Act," that is, an alleged or actual breach of fiduciary duty under a Benefits Plan in violation of ERISA. Also, a "Claim" is made when a "Designated Claims Recipient" receives written notice.

The January 5, 2016 letter, addressed to CLARCOR's vice president, discusses a scheduled on-site investigation of CLARCOR's Benefit Plan to determine whether there is compliance with ERISA. The EBSA letter also requests documents needed to assist in the investigation. (ECF DKT #27, Exhibit E).

The May 24, 2017 letter, again addressed to CLARCOR's vice president, advises that the DOL investigation found that the CLARCOR Benefit Plan violated HIPAA nondiscrimination provisions, as well as ERISA regulations through the Plan's discriminatory health plan premium tobacco surcharges. (ECF DKT #27, Exhibit F).

Full factual discovery into the DOL on-site investigation and into the complete record

of correspondence between the DOL and CLARCOR/Parker and correspondence between CLARCOR/ Parker and Travelers will illuminate when a Claim under the Policy of a Wrongful Act by the insured existed, when notice was given to the Designated Claims Recipient and whether the Claim was "first made" during the relevant coverage period under the Policy. For now, Plaintiff's allegations are sufficiently plausible.

Defendant also attacks Plaintiff's entitlement to recovery on the basis that Parker settled with the DOL without Travelers' prior consent, which is a condition precedent to coverage. Consequently, Defendant's position is that Plaintiff was the first to breach the insurance contract. Again, the Court finds that fulsome discovery will elucidate when payments were made to current and former employees and whether or not Plaintiff's actions in compensating current and former employees were such as to trigger the condition precedent of consent.

Defendant asserts that Plaintiff's compensation to the employees for improper tobacco surcharges constituted "restitution or disgorgement." Discovery, and perhaps expert discovery on insurance law, will be necessary to determine whether Plaintiff incurred an insurable loss.

Defendant recognizes that Plaintiff's Bad Faith claims are dependent upon a finding of Breach of Contract. (ECF DKT # 29 at 6). Since the Court has decided that Plaintiff has made a cognizable claim in the Amended Complaint for Breach of Contract, the Bad Faith Counts under Ohio and Tennessee law survive dismissal at this time.

## III. CONCLUSION

Accepting Plaintiff's allegations as true, and drawing all reasonable inferences in Plaintiff's favor, the Court holds that Plaintiff Parker Hannifin Corporation's Amended Complaint states claims that are plausible on their face. "Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations ... a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable ..." *Twombly*, 550 U.S. at 556.

For the foregoing reasons, the Motion (ECF DKT #25) of Defendant Travelers Casualty and Surety Company of America to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is denied.

**IT IS SO ORDERED.**

**DATE: January 13, 2021**

s/Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**Senior United States District Judge**